IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LISA A. GRECO | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 7:11-cv-399 |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner, | ) | By: Hon. Robert S. Ballou |
| Social Security Administration, | ) | United States Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Lisa Ann Greco ("Greco") filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued the issues. The case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the argument of counsel, and the applicable law. I conclude that substantial evidence supports the Commissioner's decision and that the plaintiff's assignments of error are without merit. Accordingly, I **RECOMMEND DENYING** Greco's Motion for Summary Judgment (Dkt. No. 16), and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 18).

# I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that the claimant failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The plaintiff bears the burden of proving that she suffers under a "disability" as that term is interpreted under the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent engaging in any and all forms of substantial gainful employment given the claimant's age, education, and work experience. *See* 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the

claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

**Social and Vocational History**

The claimant's age, education, and work experience are relevant factors in determining the claimant's RFC, 42 U.S.C. § 423(d)(2)(A), Taylor, 512 F.2d at 666; as the Commissioner's final decision contains an RFC, these factors are relevant in the instant case. Greco was born January 1, 1969. (Administrative Record, hereinafter "R." at 25, 170, 190.) At all relevant times she has been a "younger person" under the regulations. See 20 C.F.R. § 404.1563(c) (defining "younger person" as a person under the age of 50). Greco completed the 12th grade and attended a few semesters of college, but has no degrees, certificates, or other credentials beyond her high school diploma. (R. 25.)

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Greco ran a restaurant for approximately twenty years. (R. 27.) She and her ex-husband owned two pizza shops, each managing a separate restaurant. (R. 26.) A vocational expert ("VE") testified that the most analogous position to that of a restaurant owner in the Dictionary of Occupational Titles ("DOT") is "restaurant manager" (R. 44.) A restaurant manager is classified as light and skilled work. (R. 44.) Greco stopped working in March, 2008 when she and her ex-husband sold the restaurant she managed; she testified that they sold the restrauant because she could not keep up with her store and her ex-husband could not keep up with both locations. (R. 26.)

**Claim History**

Greco protectively filed for DBI on September 5, 2008, [2] (R. 9, 190), and completed her application on October 15, 2008. (170-75.) Greco claims a disability onset date of April 1, 2008. (R. 170, 190.) Her application for DIB was denied by the Commissioner initially and upon reconsideration. (R. 61-65, 70-76.) A hearing was then held before an ALJ on December 8, 2010, at which Greco, represented by counsel, and a VE testified. (R. 20-47.)

The ALJ issued his decision denying Greco's claims on January 11, 2011. (R. 9-19.) The ALJ found that Greco has "the following severe impairments: major depressive disorder; generalized anxiety/panic; and obesity," (R. 11), but found that none of these impairments, either individually or in combination, met or medically equaled a listed impairment. (R. 12.) The ALJ further found that Greco has an RFC to perform light work as defined by 20 C.F.R. § 404.1527(b), except that she is limited to work that involves simple, routine and rote tasks, and is low-stress—i.e. work with no fixed production quotas, with only occasional decision making and changes in working setting, with no hazardous conditions, and with only occasional or

---

[2] The protective filing date is the date a claimant first contacts the Social Security Administration about filing for benefits; it may be used to establish an earlier application date than the date which a signed application is received. See A Glossary of Social Security Terms, SocialSecuirty.gov (Oct. 3, 2012), http://www.ssa.gov/glossary.htm.

superficial interaction with the public. (R. 14.) The ALJ concluded, based on the testimony of the VE, that Greco could not perform her past relevant work as a restaurant manager. (R. 17.) Nevertheless, the ALJ found that there are jobs, which exist in significant numbers in the national economy, which Greco can perform, given her age, education, work experience, and RFC. (R. 18.) As such, the ALJ concluded Greco is not disabled. (R. 18.)

On June 30, 2011 the Social Security Administration's Appeals Council ("AC") denied Greco's request for a review of the ALJ's decision, thereby rendering the ALJ's decision as the final decision of the Commissioner. (R. 1-5.) This appeal followed with Greco filing her complaint in this court seeking judicial review of the ALJ's decision (Dkt # 1).

**Medical History**

Greco claims disability due to anxiety, panic disorder, and depression.[3] (R. 194.) At the hearing before the ALJ, Greco testified that she cannot be around people; that she feels panicky and nervous (R. 26). Greco claims she cannot maintain eye contact with others, (R. 30.), does not like to be around strangers, only goes outside of her home if absolutely necessary, (R. 28.), and shops during the early hours of the day to avoid people. (R. 30.) Greco testified that she attends church and goes to parent teacher conferences as well as other events for her children. (R. 32-33, 37.)

Greco testified that there does not appear to be any pattern to her panic attacks (R. 32). In Greco's words, she "never know[s] each day when [waking] up if [she is] going to wake up [and] have a full-blown panic attack or . . . wake up feeling well." (R. 26.) She testified that,

---

[3] Greco included "stomach problems" as an impairment claimed when she initially filed for disability. (R. 194.) The ALJ found that these health issues were a non-severe impairment. (R. 12.) Greco does not dispute this finding. This Court has reviewed the entire record in rendering its decision, but has not included those portions of the medical record relating to Greco's gastroenterological issues, (R. 244-337, 359-417), in the medical history summary.

with medication, she has attacks at least once or twice a week, (R. 31), and that she is unable to get out of bed five to ten days a month. (R. 41.)

Greco testified that her medication dosage has been the same for two years and that while she "might not function at the best level . . . it does allow [her] to function and . . . just make it through [her] life . . . ." (R. 40.) She stated that she suffered no unwanted side effects from her medication. (R. 39.)

Both Greco's testimony, (R. 26), and extensive portions of her medical records, (R. 338-39, 340, 341, 342-43, 344-45, 346, 347, 348-49, 350-51, 352-53, 354-55), indicate that she developed her mental health issues several years before she stopped working in March of 2008. She had mental health issues "a couple of years" before closing her restaurant. (R. 26.) The earliest doctor's visit in the record relating to mental health issues was in September of 2005. (R. 354-55.) The portion of the treatment records that are primarily relevant, however, are those covering the time period after Greco's alleged onset date of April 1, 2008.

Greco's first treatment date after her alleged of disability was September 15, 2008, when she saw William Rea, M.D., of the Carilion Department of Psychiatry and Behavioral Medicine in a follow-up for depression and anxiety. Greco told Dr. Rea at the time that she was having fewer panic attacks. She also mentioned that she and her husband were divorcing. Dr. Rea diagnosed Greco as suffering from (1) major depression disorder ("MDD"), recurrent and in partial remission, (2) generalized anxiety disorder ("GAD"), (3) panic disorder, and (4) obesity. Dr. Rea decided to continue with Greco's current medication regimen unchanged and asked her follow-up with him in three months. (R. 478-79).

Greco did not see Dr. Rea again for six months. On March 9, 2009, Dr. Rea noted Greco had been having a "fair amount of anxiety with an occasional panic attack" and "continued to be

6

depressed, anergic, and anhedonic." His diagnosis and prescribed medication regimen was unchanged from Greco's September 15, 2008 visit. Dr. Rea asked Greco follow-up with him in three months. (R. 478-79.)

On August 3, 2009, Greco saw Susan Russell, a nurse practitioner at the Carilion Roanoke Memorial Hospital, explaining that she felt panicked most mornings upon waking, but that her medication "takes care of it" and helps her mood. She further reported trying to get out of the house more for short periods with her sister and a girlfriend, but stated she continued to avoid crowds. Ms. Russell assessed Greco as having MDD, panic disorder, and GAD and asked her to return in six weeks and to call sooner if needed. (R. 453-54.)

Greco saw Ms. Russell again on December 21, 2009, some four and half months later. Greco reported the unfortunate death of her brother; she stated her sleep was poor and that she had frequent crying spells. She further stated her anxiety was increased and that she was avoiding social gatherings and going out in public. Ms. Russell noted that Greco was "[t]earful—grieving appropriately." Ms. Russell's again assessed Greco as having MDD, panic disorder, and GAD. Ms. Russell discussed grief counseling with Greco and asked her to return in one month or call sooner if needed. (R. 472-73.)

A month and a half later, on February 4, 2010, Greco again saw Ms. Russell. Greco reported that her medication controlled her mood and that her sleep "was good." She further stated that she was the primary caretaker for her parents, both in their seventies. She reported that her mother's anxiety over her brother's death affected her. Ms. Russell's assessment remained MDD, panic disorder, and GAD. Ms. Russell again discussed grief counseling for Greco and her parents, as well as discussed relaxation techniques; she asked Greco to return in three months or sooner if needed. (R. 470-71.)

On June 3, 2010, Greco returned to Ms. Russell and reported a number of stress factors in her life: a friend in the ICU, a strained relationship with her ex-husband, and her children being home from school. These factors, combined with a reduction in dosage in one of Greco's medications had "collided" and made "life miserable for her." Ms. Russell noted that Greco visibly relaxed when she was told to remain on her current medication dosage for the next two weeks. Once again, Ms. Russell's assessment was panic disorder and GAD. Ms. Russell gave "encouragement and support" and asked Greco to return in two weeks or call sooner if needed. (R. 466-67.)

Greco saw Ms. Russell once more on July 14, 2010. Greco stated that medications controlled her mood and that she wished for them remain at their current dosage levels. She also reported that she continued to have stress taking care of her elderly parents and having her teenage children home for the summer. Ms. Russell's assessment was panic disorder and GAD. Ms. Russell noted that "encouragement and support [was] given." The record does not indicate if or when a follow-up appointment was scheduled. (R. 464-65.)

Dr. Robert Gerstle submitted a psychiatric review report dated December 31, 2008. (R. 418-30.) Dr. Gerstle diagnosed Greco with MDD, (R. 421), and GAD. (R. 423). He found that she has mild functional limitations in the activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace (R. 428.) Dr. Gerstle found Greco's statements to be partially credible, noting that she has a history of treatment for anxiety and depression, but that her symptoms are well controlled with medication and that ongoing therapy is not needed (R. 430.) Dr. Carolina Longa completed a medical evaluation on December 31, 2008 finding that Greco's condition was controlled with medication and that she has no physical limitations; Dr. Longa characterized Greco's condition as non-severe. (R. 431.)

Dr. Bruce Sellars met with Greco in person on November 17, 2010; he also assessed the results of Greco's Personality Assessment Inventory ("PAI")—an objective, computer scored personality test based on self-reporting. Dr. Sellars' reported that the PAI results were considered valid, but noted that there was some subtle suggestion that Greco attempted to portray herself in a negative or pathological manner in certain areas. (R. 485.) Dr. Sellars further noted that Dr. Rea and other providers' treatment records "did not seem to see the amount of distress that [Greco] seems to indicate on the PAI. (R. 486.) He also noted that Ms. Russell's treatment notes did not indicate that Greco was having significant depression and that her anxiety and panic attacks were fairly well controlled. (R. 484.)

Dr. Sellars' diagnostic impression of Greco was GAD, depressive disorder with possible recurrent major depression, as well as possible post-traumatic stress disorder and possible social phobia. (R. 486.) Dr. Sellars' indicated that "there is a question about [her] being able to attend a job regularly and being able to deal with the typical stresses inherent to most public job situations." (R. 487.) He also stated that she "should be able to get along well with coworkers or the public and has a track record of doing [so]." (R. 487.)[4] Ultimately, Dr. Sellars' concluded that Greco has a marked impairment in her ability to make judgments on complex work-related decisions, (R. 490), and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 491.)

### III.

Plaintiff argues that the ALJ (1) improperly assessed the plaintiff's creditability, (2) failed to properly consider the evidence, and (3) failed to comply 20 C.F.R. § 404.1527 by not providing any reason for his rejection of portions of the opinion of Dr. Sellars, the consulting

---

[4] Greco reported to Dr. Sellars that she "was working in the family business quite well up until the business was sold." (R. 486.)

psychologist. For the reasons outlined below, this court finds each of these arguments without merit.

## ALJ's Credibility Determination

Greco argues that the ALJ "makes a single, conclusory statement" that Greco's statements concerning the intensity, persistence, and limiting effects of her alleged symptoms are not credible. Pl.'s Br. 15. Of course, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that . . . 'the allegations are (or are not) credible' . . . [the] decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . ." Social Security Ruling ("SRR") 96-7p.[5] However, the ALJ did provide specific reasons for his finding and cited to supporting evidence in the record. The ALJ stated in his opinion that:

> The undersigned finds the claimant only partially credible. The claimant's treatment records do not support such a level of severity as she alleges. The claimant reported and testified that medication helps her mood and anxiety and that she has less panic attacks. She reported significant activities of daily living. The claimant may get help from her children to do household chores, but she is quite active. She drives her children to school, attends after school functions, shops, and admits that she cooks and completes household chores. Furthermore, there is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. The evidence reveals the claimant reported no problems working in the family business until her and her husband closed it.

(R. 17.) (internal citations omitted). The ALJ explained his evaluation of Greco's credibility based upon his review of the record as a whole. The ALJ cites Greco's testimony regarding the effectiveness of her medication and the nature of her daily activities, and notes evidence that Greco stopped working for reasons not related to her alleged disability.

---

[5] "Social Security Rulings are interpretations by the Social Security Administration of the Social Security Act. While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995) (citing Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989)).

Credibility determinations are the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92-1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). The ALJ's credibility determination is supported by substantial evidence and the court will therefore not disturb it. See Johnson, 434 F.3d at 658-59 (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).

### ALJ's Consideration of the Evidence

Greco argues that, upon review of the record as a whole, substantial evidence does not exist to support the ALJ's decision. A review of the record demonstrates otherwise. There are significant gaps in Greco's history of mental health treatment. (R. 15). Greco did not report back to either Dr. Rea or Nurse Practitioner Russell for almost six months to have her first mental health treatment session after her alleged onset date. (R. 466.) The treatment notes indicate that Greco's symptoms were controlled with medication and her symptoms were largely situational. (R. 15). Multiple times during these treatment sessions Greco reported that her medication was helping or controlling her mood. (R. 453, 464, 470.) When Greco did report anxiety, it was due to situational stressors. For example, she reported fewer panic attacks when she and husband decided to separate.[6] (R. 478.) Her distress following the death of her brother was characterized as appropriate grieving by Ms. Russell, who gave no additional treatment beyond discussing grief counseling with Greco. (R. 473). Greco's unhappiness due to her friend's ICU visit, her strained relationship with her ex-husband, and her children being home from school was ameliorated by restoring her medication dosage (R. 466). She "visibly relaxed"

---

[6] Greco's marital troubles are well documented in the record. (R. 340, 341, 347, 352, 447, 452, 466, 483.)

upon being told her current medication dosage would be continued, (R. 466), and by her next appointment, three weeks later, she reported her mood was controlled by her mediation at its current dosage. (R. 464).

Greco only sought mental health treatment seven times during the relevant period between April 1, 2008 and the hearing date on December 8, 2010.[7] Besides continuing her medication regimen, the mental health professionals who met with and treated Greco did not find it necessary to provide her with any other treatment beyond "encouragement and support." (R. 464, 466.) The records do not show that Greco's issues regarding depression or anxiety prevented Greco from engaging in substantial gainful activity. The court finds, therefore, that substantial evidence supports the ALJ's conclusion that "[i]n sum . . . the totality of the evidence . . . does not exhibit the types of medical treatment one would expect for a totally disabled individual." (R. 17.)

**ALJ's Consideration of Dr. Sellars' Opinion**

Greco argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not providing any reasons for his rejection of portions of Dr. Sellars' opinion. Pl.'s Br. 10. Here, Dr. Sellers gave the opinion that Greco's mental health limitations would limit her ability to respond appropriately to usual work situations or to changes in the work conditions. An ALJ is not bound by the findings of a psychological consultant such as Dr. Sellars. 20 C.F.R. § 404.1527(e)(2)(i). An ALJ "must consider findings and other opinions of State agency medical and psychological consultants . . . except for the ultimate determination about whether [a claimant is] disabled." Id. § 404.1527(e)(2)(i). Additionally, "[u]nless a treating source's

---

[7] Greco testified that she "did go through a long period where [she] did a lot of cancellations and where [she] had sick kids and [she] was sick." (R. 38.) It is the ALJ's task, not this court's, to determine the persuasiveness of this testimony. Mastro, 270 F.3d at 176 (citing Craig, F.3d at 589) (explaining that, in reviewing for substantive evidence, courts should not re-weigh conflicting evidence).

opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." Id. at § 404.1527(e)(2)(ii).

The ALJ explained the weight he gave to the opinions of Dr. Sellars and the two State agency physicians. "The opinions of the two State agency physicians [were] accorded some weight but the [ALJ gave] the claimant the benefit of the doubt as to her subjective complaints . . . ." (R. 17.) Dr. Sellars' consultative opinion was accorded "significant weight" by the ALJ, who cited both Dr. Sellars' familiarity with Social Security regulations and the doctor's opportunity to examine Greco. (R. 17.) The ALJ therefore did comply with 20 C.F.R. § 404.1527.

Greco more specifically argues that the ALJ "clearly ignored the opinions of Dr. Sellars that [Greco] has a marked impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting and that she would be unable to regularly attend a job[] given that [] the [VE] testified these limitations would preclude all work activity." Pl.'s Br. 11. Because the VE testified that such a marked limitation would eliminate work, (R. 45), and because Dr. Sellars found Greco had a marked limitation in this area, (R. 491), the ALJ implicitly discounted Dr. Sellars' opinion as to this issue by finding Greco not disabled. The ALJ also explicitly stated that Dr. Sellars' opinion was accorded significant weight. (R. 17.) Significant weight, however, is not controlling weight. In contrast to a treating source's opinion, see 20 C.F.R. § 404.1527(c)(2), the ALJ is not obligated to give a consultative source's opinion controlling weight even where, as with Dr. Sellars, it is consistent with the record as a whole and well supported by examination and test results. (R. 17.) It was therefore proper for the ALJ to construct his RFC on the record as a whole, not based solely on Dr. Sellars' opinion.

13

The ALJ makes clear that he did give weight, albeit less weight, to the treatment records, (R. 17), and the agency physicians. (R. 17.) Indeed, the ALJ makes clear he considered "the evidence of record [sic], the claimant's testimony, and the claimant's credibility . . . . [and] the results of the claimant's consultative psychological evaluation, and the *totality of the evidence* . . . ." (R. 17) (emphasis added). Thus, the ALJ properly considered the findings of Dr. Sellars, 20 C.F.R. § 404.1527(e)(2)(i), explained the weight he gave to that opinion, id. § 404.1527(e)(2)(ii), and derived an RFC by considering the evidence as a whole.

Greco further argues that the ALJ erred in his assessment of the Dr. Sellars' opinion. Specifically, Greco argues the ALJ's "conclusion that no treating or examining physician has specifically given the plaintiff limitations that would preclude all work related activities is clearly in error as Dr. Sellars' report and opinions include limitations that preclude all work related activities." Pl.'s Br. 12. The ALJ stated that:

> As for the opinion evidence, the record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision, *therefore the undersigned carefully reviewed the claimant's treatment records* and assigns them weight but only to the extent they are not inconsistent with the findings herein.

(R. 17.) (emphasis added). The full context of the sentence referred to by Greco shows that the ALJ was referring to those treating or examining physicians whose opinions are contained in Greco's treatment records. The broader context of the paragraph in which the sentence appears further affirms this reading. The ALJ first discusses the weight given to the treatment records and the opinions of those treating or examining physicians found therein. Next, the ALJ discusses the weight accorded to the two State agency physicians. (R. 17.) Finally, the ALJ discusses "[t]he opinion of the consultative examiner, Dr. Sellars . . . ." (R. 17.) Thus, the phrase "treating or examining physicians" refers to those generating Greco's treatment records;

14

Dr. Sellars' consultative report is discussed separately. The ALJ's was therefore not claiming that Dr. Sellars' opinion had no limitations greater than those determined in his RFC.

Greco's makes the additional argument that the ALJ ignored Dr. Sellars' opinion that she would be unable to regularly attend to a job. Dr. Sellars' stated in his opinion that "there is a question about [her] being able to attend a job regularly and being able to deal with the typical stresses inherent to most public job situations." (R. 487.) Dr. Sellars' report includes a medical source statement of ability to do work-related activities. (R. 490-92.) It is on this form that Dr. Sellars gave his opinion that Greco has marked impairments in her ability to make judgment on complex work related decisions, (R. 490), and in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. 491.) These two limitations were indicated by checking blocks. The form does not have a check block for impairments in regularly attendance;[8] it does, however, have a section calling for "any other capabilities affected by the [claimant's] impairment." (R. 491.) Dr. Sellars, however, left this section blank. Dr. Sellers does not indicate that Greco indeed would not be capable of attending work regularly or otherwise engage in work related activities. In fact, Dr. Sellers followed his question about Greco's ability to attend a job or to deal with the stresses inherent in a public situation with the suggestion that Greco engage a therapist to address the affects of anxiety and depression and to assist with her medical management.

Furthermore, the VE testified that a rate of absenteeism of twice a month would abolish the occupational base.[9] (R. 46.) Thus, even assuming Dr. Sellars' medical opinion was that Greco could not attend work "regularly," there is no evidence showing that "regularly" is equivalent to the rate of absenteeism that the VE testified would eliminate work. During the

---

[8] The term "check box" may be more common, but the form itself uses the term "block." (R. 490-91.)
[9] Greco testified that she could not get out of bed five to ten days a month. (R. 41.) However, as previously discussed, the ALJ found her only partial credible and the ALJ did not error in making this finding.

hearing before this court Greco argued that ALJ had a duty to resolve this ambiguity.  It is true that Social Security hearings are non-adversarial and the ALJ has a duty to develop the record, see e.g. Jones v. Astrue, CIV.A. CBD-09-2314, 2010 WL 4923294, at *11 (D. Md. Nov. 29, 2010) (citing Walker v. Harris, 642 F.2d 712, 714 (Cir. 4th 1981)); this duty is discharged, however, so long as "the record is adequate to make a determination regarding a disability claim."  France v. Apfel, 87 F.Supp.2d 484, 490 (D. Md. 2000); cf. Parker v. Astrue, 792 F.Supp.2d 886, 895 (E.D.N.C. 2011) (noting it is clear that an ALJ's duty to re-contact a *treating* source "arises only when the evidence as a whole is inadequate to determine the issue of disability").  Greco makes no argument that the record before the ALJ was so inadequate that a disability determination could not be made.

Finally, the ALJ gave substantial—not controlling—weight to Dr. Sellars' opinion.  The ALJ crafted his RFC based on the evidence as a whole.  Assuming both that Dr. Sellars' question about Greco's absenteeism was a medical opinion and that it was definitive enough it could have been incorporated into an RFC, the implication is that the ALJ simply declined to do so.  As the ALJ stated, his RFC was based on the "totality of the evidence" and not simply the opinion of Dr. Sellars.  (R. 17.)

The ALJ therefore did not fail to comply with 20 C.F.R. § 404.1527, nor otherwise error, in his evaluation of Dr. Sellars' opinion.  The RFC is consistent with the weight given to Dr. Sellars and the record as a whole demonstrates that it is supported substantial evidence.

## RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **GRANTING** the Commissioner's motion for summary judgment, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

16

The clerk is directed to transmit the record in this case to the Honorable Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Entered: December 27, 2012

/s/ *Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge